# In the United States District Court
# for the Southern District of Georgia
# Brunswick Division

| | |
|---|---|
| CRYSTAL LEIGH WENTWORTH,<br><br>    Plaintiff,<br><br>    v.<br><br>SGT. JOSHUA BEAUCHAMP; OFFICER BARTCHLETT; and JIM PROCTOR, in their official and individual capacities,<br><br>    Defendants. | 2:21-CV-55 |

## ORDER

Before the Court is a motion for summary judgment filed by Defendants Joshua Beauchamp, Officer Bartchlett, and Jim Proctor. Dkt. No. 34. The motion has been fully briefed and is ripe for review. Dkt. Nos. 34, 36, 40, 43. For the reasons stated below, Defendants' motion is **GRANTED**.

## BACKGROUND

On June 7, 2019, just past midnight, Plaintiff Crystal Wentworth was booked into the Camden County Jail after being charged with disorderly conduct, affray, battery, and cruelty to children. Dkt. No. 34-2 at 14; Dkt. No. 36 ¶¶ 1-2; Dkt. No. 40-2 ¶¶ 1-2. Several hours later, Defendant Beauchamp, a sergeant with the Camden County Sheriff's Office, "heard a loud banging noise

. . . from the holding area," and, on camera, observed Plaintiff striking the door of her holding cell. Dkt. No. 34-2 at 2; Dkt. No. 36 ¶ 3; Dkt. No. 40-2 ¶ 3. At the time, Defendant Bartchlett, an officer, was "conducting head count." Dkt. No. 34-2 at 2. Defendant Beauchamp told Defendant Bartchlett to speak with Plaintiff after "she was done with count." Id. After count, Defendant Bartchlett went to Plaintiff's holding cell and spoke with Plaintiff, "who was in an agitated state and stated she needed to use the rest room." Id.; Dkt. No. 36 ¶ 4; Dkt. No. 40-2 ¶ 4. Defendant Bartchlett then allowed Plaintiff and another inmate to use the restroom. Dkt. No. 34-2 at 2; Dkt. No. 36 ¶ 4; Dkt. No. 40-2 ¶ 4.

The encounter that forms the basis of the complaint is captured on surveillance video and submitted as evidence. See Dkt. No. 34-3, Exhibit B; Dkt. No. 34-4, Exhibit C; Dkt. No. 35 (notice of manual filing). While the other inmate was in the restroom, Plaintiff sat on a bench in the holding area and complained to Defendant Bartchlett about conditions in her holding cell. Dkt. No. 34-2 at 2; Dkt. No. 36 ¶ 4; Dkt. No. 40-2 ¶ 4; Dkt. No. 40-1 at 2; Dkt. 34-4, Exhibit C at 0:03:35. As Plaintiff and Defendant Bartchlett talked, the conversation took a turn, with Plaintiff becoming very loud and beginning to scream at Defendant Bartchlett. Dkt. No. 34-4, Exhibit C at 0:03:35-0:04:24.

2

Plaintiff then asked Defendant Bartchlett who the sergeant on duty was. Dkt. No. 34-4, Exhibit C at 0:04:39.

About ten seconds later, Defendant Beauchamp entered the holding area and asked, "what's the problem?" Id. at 0:04:48-49. Plaintiff then reiterated her complaints about the conditions of her holding cell to Defendant Beauchamp. Id. at 0:04:49-0:05:25. Plaintiff concluded by stating, "second of all, I'm not no animal and you not gon' tell me that I gotta lay on no damn dirty ass floor." Id. at 0:05:19-25. Defendant Beauchamp then walked over to Plaintiff, crouched down so that his face was inches from her face, and yelled "you will lay wherever the fuck I tell you to lay." Id. at 0:05:25-29. From that point on, Defendant Beauchamp and Plaintiff continued to yell at each other—with Defendant Beauchamp stationed inches from Plaintiff's face, Plaintiff continuously yelling "get out of my face," and Defendant Beauchamp responding with some rendition of "or what?" Id. at 0:05:25-0:05:59.

Eventually, Defendant Beauchamp told Plaintiff he would "smack [her] the fuck up." Id. at 0:05:55-0:06:00. Defendant Bartchlett then moved toward Plaintiff, and Plaintiff stood up from the bench, continuing to yell at both Defendants Beauchamp and Bartchlett. Id. Plaintiff screamed, "you are not going to hit me," while Defendant Beauchamp pointed down to the chair and told Plaintiff to sit down. Id. at 0:06:00-0:06:32. Defendant

3

Bartchlett joined in directing Plaintiff to sit down, but Plaintiff did not sit.  Id.  After approximately thirty seconds of this give-and-take, Defendant Beauchamp grabbed Plaintiff by her neck and left arm forcing her to sit on the bench.  Id. at 0:06:30-0:06:35.  At this point, Plaintiff continued to scream as both Defendants Beauchamp and Bartchlett peered over her, with Defendant Beauchamp threating to put Plaintiff in a chair in the holding area, which Plaintiff refers to as the "discipline chair."  Id. at 0:06:35-0:07:00; Dkt. No. 40-1 at 3.  During this period, Defendant Beauchamp told Plaintiff to "calm down" and stated, "I am trying to talk to you," while Plaintiff continuously screamed "get out of my face."  Dkt. No. 34-4, Exhibit C at 0:06:35-0:07:00.  Plaintiff then stated multiple times, "I can't breathe" and requested the officers "call a squad," and Defendant Beauchamp took a step away from the bench.  Id. at 0:07:08-0:07:19.  As Plaintiff complained of her inability to breathe, she clutched her chest and threw herself face-first onto the holding area floor.  Id. at 0:07:19-0:07:23.

   Plaintiff was on the floor for approximately four minutes.  Id. at 0:07:19-0:11:28.  During this time, Defendants Beauchamp and Bartchlett stood above Plaintiff and commanded her to get up from the floor, which Plaintiff ignored.  Id.  Plaintiff instead continued to scream, demanding medical attention because she could not breathe and directing obscenities at both officers.  Id.

4

Because Plaintiff refused to get up from the floor, Defendants Beauchamp and Bartchlett grabbed Plaintiff by her arms and pulled her back up to the bench. Id. at 0:11:20-28. Plaintiff continued to scream, still demanding "a squad," stating she could not breathe and telling the officers, "get off of me," amongst other things, in response to the officers' demands to "stop" and "settle down." Id. at 0:11:28-43. After a few minutes, Defendants Beauchamp and Bartchlett took Plaintiff out of the holding area so that she could shower and go back to her holding cell. Id. at 0:21:10-17.

Plaintiff filed this lawsuit on June 5, 2021, asserting various claims against Defendants Beauchamp, Bartlett, Sheriff Jim Proctor, and Officer John Doe, in both their official and individual capacities. Dkt. No. 1. Pursuant to 29 U.S.C. § 1915A, the Court dismissed Plaintiff's claims against Defendants Bartchlett and Beauchamp in their official capacities and Plaintiff's state law claims for assault and battery and intentional infliction of emotional distress. Dkt. No. 10. The Court later dismissed all claims against Defendant John Doe. Dkt. No. 19.

The remaining Defendants moved for summary judgment as to all of Plaintiff's remaining claims, including her Fourteenth Amendment excessive force claim against Defendant Beauchamp, her Fourteenth Amendment failure to intervene claim against Defendant Bartchlett, her Fourteenth Amendment deliberate indifference to a

5

serious medical need claim against Defendants Bartchlett and Beauchamp, her Fourteenth Amendment equal protection claim against Defendants Bartchlett and Beauchamp, and her policy or custom claim against Defendant Proctor in his individual and official capacities. Dkt. No. 34. In response, Plaintiff conceded that Defendants are entitled to summary judgment on her deliberate indifference and equal protection claims, in addition to her claims against Defendant Sheriff Jim Proctor. Dkt. No. 40-1 at 6. Thus, Defendants' motion for summary judgment is **GRANTED** as to Plaintiff's claims against Defendant Sheriff Jim Proctor and her deliberate indifference and equal protection claims against Defendants Beauchamp and Bartchlett. All that remains for the Court to address are Plaintiff's excessive force claim against Defendant Beauchamp and failure to intervene claim against Defendant Bartchlett. Dkt. No. 40-1 at 4-6.[1]

## LEGAL STANDARD

Summary judgment "shall" be granted if "the movant shows that there is no genuine dispute as to any material fact and that the

---

[1] In her response, Plaintiff attempts to revive her state law assault and battery claims which were already addressed and dismissed during frivolity review. Dkt. No. 40-1 at 6; Dkt. No. 10; 29 U.S.C. § 1915A. These claims cannot be resurrected in response to Defendants' motion for summary judgment. See also Gilmour v. Gates, McDonald & Co., 382 F.3d 1312, 1315 (11th Cir. 2004) (new claim may not be raised in a response to defendant's summary judgment motion). To the extent Plaintiff now seeks reconsideration, she has failed to make a sufficient argument for granting such request.

6

movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A dispute is "genuine" where the evidence would allow "a reasonable jury to return a verdict for the nonmoving party." FindWhat Inv. Grp. v. FindWhat.com, 658 F.3d 1282, 1307 (11th Cir. 2011) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).  A fact is "material" only if it "might affect the outcome of the suit under the governing law."  Id. (quoting Anderson, 477 U.S. at 248).   Factual disputes that are "irrelevant or unnecessary" are not sufficient to survive summary judgment. Anderson, 477 U.S. at 248.

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  The movant must show the court that there is an absence of evidence to support the nonmoving party's case.  See id. at 325.

If the moving party discharges this burden, the burden shifts to the nonmovant to go beyond the pleadings and present affirmative evidence to show that a genuine issue of fact does exist.  See Anderson, 477 U.S. at 257. The nonmovant may satisfy this burden in one of two ways.  First, the nonmovant "may show that the record in fact contains supporting evidence, sufficient to withstand a directed verdict motion, which was 'overlooked or ignored' by the moving party, who has thus failed to meet the initial burden of showing an absence of evidence."  Fitzpatrick v. City of Atlanta,

7

2 F.3d 1112, 1116 (11th Cir. 1993) (quoting Celotex Corp., 477 U.S. at 332 (Brennan, J., dissenting)). Second, the nonmovant "may come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency." Id. at 1117. Where the nonmovant attempts to carry this burden with nothing more "than a repetition of his conclusional allegations, summary judgment for the [movant is] not only proper but required." Morris v. Ross, 663 F.2d 1032, 1033-34 (11th Cir. 1981) (citing Fed. R. Civ. P. 56(e)).

## DISCUSSION

Plaintiff's remaining claims are for excessive force against Defendant Beauchamp and failure to intervene against Defendant Bartchlett. Dkt. No. 40-1 at 4-6. Defendants are entitled to summary judgment.

### I. Plaintiff's Excessive Force Claim Against Defendant Beauchamp

Qualified immunity "'completely protects government officials performing discretionary functions from suit in their individual capacities unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known.'" Schantz v. DeLoach, No. 20-10503, 2021 WL 4977514, at *4 (11th Cir. Oct. 26, 2021), cert. denied, 142 S. Ct. 1418 (2022) (quoting Marbury v. Warden, 936 F.3d 1227, 1232 (11th Cir. 2019)).

Because the parties do not dispute that Defendant Beauchamp was acting in his discretionary authority, Plaintiff bears the burden of showing "(1) the violation of a constitutional right, (2) which right was clearly established at the time of the alleged misconduct." Schantz, 2021 WL 4977514, at *4; see also id. ("A defendant who asserts qualified immunity has the initial burden of showing he was acting within the scope of his discretionary authority when he took the allegedly unconstitutional action."). These two requirements may be analyzed in any order. Pearson v. Callahan, 555 U.S. 223, 236 (2009).

"To be clearly established, the contours of a right must be 'sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it.'" Schantz, 2021 WL 4977514, at *4 (quoting Kisela v. Hughes, 138 S. Ct. 1148, 1153 (2018)). Plaintiff must point to "'existing precedent [that] placed the statutory or constitutional question beyond debate' and [gave] the official fair warning that his conduct violated the law." Id. (quoting Kisela, 138 S. Ct. at 1152). Generally, fair warning is provided by "materially similar precedent from the Supreme Court, this Court, or the highest state court in which the case arose." Id. (citing Gates v. Khokhar, 884 F.3d 1290, 1296 (11th Cir. 2018)). "Authoritative judicial decisions may also establish broad principles of law that are clearly applicable to the conduct at issue. And very occasionally,

9

it may be obvious from explicit statutory or constitutional statements that conduct is unconstitutional." Id. (quoting Gates, 884 F.3d at 1296-97) (quotation marks omitted)).

"[A] pretrial detainee's Fourteenth Amendment excessive-force claim is governed by a rule of 'objective reasonableness.'" Patel v. Lanier Cnty., Ga., 969 F.3d 1173, 1181 (11th Cir. 2020) (quoting Kingsley v. Hendrickson, 576 U.S. 389, 396-97 (2015)). So, Plaintiff must show "that the force purposely or knowingly used against [her] was objectively unreasonable." Kingsley, 576 U.S. at 396-97; see also id. at 397 ("objective reasonableness turns on the 'facts and circumstances of each particular case'" (quoting Graham v. Conner, 490 U.S. 386, 396 (1989))). The Fourteenth Amendment's standard "is analogous to the Fourth Amendment's." Patel, 969 F.3d at 1182 (citing Piazza v. Jefferson Cnty., Ala., 923 F.3d 947 (11th Cir. 2019) and Kingsley, 576 U.S. 389 (2015)); see also Piazza, 923 F.3d at 952-53 ("[T]he Fourteenth Amendment standard has come to resemble the test that governs excessive-force claims brought by arrestees under the Fourth Amendment."). This is a fact-specific inquiry, based on "the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight." Kingsley, 576 U.S. at 397. This requires courts to balance "the nature and quality of the intrusion" on Plaintiff's

rights "against the countervailing governmental interests at stake." Graham, 490 U.S. at 396.

In doing so, courts should "account for the 'legitimate interests that stem from [the government's] need to manage the facility in which the individual is detained,' appropriately deferring to 'policies and practices that in th[e] judgment' of jail officials 'are needed to preserve internal order and discipline and to maintain institutional security.'" Kingsley, 576 U.S. at 397 (quoting Bell v. Wolfish, 441 U.S. 520, 540 (1979)). "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." Graham, 490 U.S. at 396-97.

The Kingsley Court provided a list of non-exclusive factors for lower courts to consider when determining the reasonableness of the force used, including:

> [1] the relationship between the need for the use of force and the amount of force used; [2] the extent of the plaintiff's injury; [3] any effort made by the officer to temper or to limit the amount of force; [4] the severity of the security problem at issue; [5] the threat reasonably perceived by the officer; and [6] whether the plaintiff was actively resisting.

Kingsley, 576 U.S. at 397.

Moreover, an indicator of when force becomes "excessive" is if the detainee "stopped resisting." See Piazza, 923 F.3d at 953

11

("'[w]hen jailers continue to use substantial force against a prisoner who has clearly *stopped resisting*—whether because he has decided to become compliant, he has been subdued, or he is otherwise incapacitated—that use of force is excessive'" (quoting Danley v. Allen, 540 F.3d 1298, 1309 (11th Cir. 2008))). So, "because force in the pretrial detainee context may be defensive or preventative—but never punitive—the continuing use of force is impermissible when a detainee is complying, has been forced to comply, or is clearly unable to comply." Id. at 953.

While pretrial detainees "'have a right to be free from force that is excessive, they are not protected against a use of force that is necessary in the situation at hand.'" Jones v. Michael, 656 F. App'x 923, 929 (11th Cir. 2016) (quoting Jean-Baptiste v. Gutierrez, 627 F.3d 816, 821 (11th Cir. 2010)). This includes the use of force as required to "'preserve internal order and discipline' and 'maintain institutional security.'" Piazza, 923 F.3d at 953 (quoting Kingsley, 576 U.S. at 397).

Even taking the facts in the light most favorable to Plaintiff, the totality of the circumstances shows that Defendant Beauchamp's conduct does not constitute excessive force. While Plaintiff contends she rose from the bench only because she was "threatened and afraid of what Defendant Beauchamp would do," dkt. no. 40-1 at 3, and that she "posed no threat" to anyone, dkt. no. 40-1 at 4, Plaintiff's initial impatient and aggressive conduct

12

toward Defendant Bartchlett, of which Plaintiff makes no mention in her own brief, set the tone for the rest of the encounter. Dkt. No. 34-4, Exhibit C at 0:03:35-0:04:24. Only after Plaintiff yelled at Defendant Bartchlett did Defendant Beauchamp appear in the holding area, seemingly in response to that disruption. Id. at 0:04:48-49.

Indeed, shortly after his arrival to the holding area, Defendant Beauchamp crouched down into Plaintiff's face and screamed commands and obscenities at her. Id. at 0:05:25-29. But he did so in response to Plaintiff's statement that she is "not no animal" and that the officers were "not gon' tell [her] that [she] gotta lay on no damn dirty ass floor." Id. at 0:05:19-25. While abrupt, Defendant Beauchamp's threats and gestures alone do not amount to constitutional violations. See McFadden v. Lucas, 713 F.2d 143, 146 (5th Cir. 1983) (holding an "intimidating show of force" accompanied by no physical harm does not amount to a constitutional violation); see also Hernandez v. Fla. Dep't of Corr., 281 F. App'x 862, 866 (11th Cir. 2008) ("[V]erbal abuse alone is insufficient to state a constitutional claim.").

Plaintiff also makes no mention of her own actions leading to Defendants "choke slam[ming]" her. Dkt. No. 40-1 at 5. Plaintiff insists that Defendant Beauchamp "provoked the incident by getting inches from [Plaintiff's] face and yelling," dkt. no. 40-1 at 4, and that she "did not stand until Defendant Beauchamp threatened

13

to assault [her]," dkt. no. 40-1 at 5. But Plaintiff ignores the fact that she initiated the shouting match and that Defendant Beauchamp came to the holding area only in response to an already-initiated disruption between Plaintiff and Defendant Bartchlett. Dkt. No. 34-4, Exhibit C at 0:04:49-0:05:25.

While Plaintiff contends Defendant Beauchamp's grabbing her "by the throat" constitutes excessive force, she admits, and the video of the incident shows, that in the moments leading up to this physical response, Plaintiff ignored both Defendants Beauchamp and Bartchlett's commands "to sit down" while "point[ing] down to the chair." Dkt. 40-1 at 3; Dkt. No. 34-3, Exhibit C at 0:06:00-0:06:32; see also Piazza, 923 F.3d at 953 ("Obviously, 'legitimate interests'—including the need to 'preserve internal order and discipline' and 'maintain institutional security'—may at times require jail officers to use force." (quoting Kingsley, 576 U.S. at 397)). So, even if Plaintiff stood up only after "Defendant Beauchamp threatened to assault [her]," dkt. no. 40-1 at 5, her refusal to follow repeated commands to sit down and continuous screaming justified the use of some degree of force "to preserve internal order and discipline and maintain institutional security," Kingsley, 576 U.S. at 397.

Plaintiff does not contend, and the evidence does not show, that Defendant Beauchamp did anything aside from grab Plaintiff by the neck and left arm at the time she refused his commands.

14

Plaintiff has presented no evidence showing, for example, that she "decided to become compliant, [s]he [had] been subdued, or [s]he [was] otherwise incapacitated," which would make use of force excessive. Id. Moreover, Defendant Beauchamp's use of force did not occur when Plaintiff "stopped resisting." Piazza, 923 F.3d at 953. To the contrary, Defendant Beauchamp grabbed Plaintiff's neck and left arm only to place her back on the bench after her repeated refusal to follow the officers' commands to sit down. Dkt. 40-1 at 3; Dkt. No. 34-3, Exhibit C at 0:06:00-0:06:32. So too, Defendant Beauchamp's grip ceased the second he put Plaintiff back on the bench. Id. Thus, this is not a situation where a "jailer[] continue[d] to use substantial force" once a detainee's conduct was seemingly under control. Piazza, 923 F.3d at 953. Although Plaintiff indicates Defendant Beauchamp's grip on her neck was uncomfortable or even intrusive, "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates" the Constitution. Graham, 490 U.S. at 396-97.

Given Plaintiff's disregard for both officers' repeated commands to sit down, and her own contribution to the ongoing shouting match, she has presented no evidence to show that Defendant Beauchamp's brief grip of her neck and left shoulder as he positioned her back on the bench was unreasonable. Particularly in light of the countervailing interests of preserving internal

15

order and discipline, Defendant Beauchamp's conduct in response to Plaintiff's own conduct, agitated state, and failure to comply with instructions was not unreasonable.

Plaintiff's contention that Defendant Beauchamp threatened to put her in the "discipline chair" similarly fails. Dkt. No. 40-1. While it is unclear what the "discipline chair" entails—given neither party explained its purpose—an officer's implication or threat that a detainee will be disciplined for improper conduct is not a constitutional violation. See Sepulveda v. Burnside, 170 F. App'x 119, 124 (11th Cir. 2006) (holding that verbal taunting does not amount to a constitutional violation) (citing Edwards v. Gilbert, 867 F.2d 1271, 1274 n.1 (11th Cir. 1989)).

Moreover, Plaintiff complains that after she threw herself face-first onto the floor, Defendant Beauchamp ignored her requests for "a squad" as she claimed she was unable to breathe, but she provides no evidence or argument to support an excessive force claim, or any claim for that matter, in conjunction with this contention. Dkt. No. 40-1 at 3. It is clear on the video that her breathing and screaming continued. Dkt. No. 34-4, Exhibit C at 0:07:19-0:11:28. Aside from Plaintiff's objection regarding Defendant Beauchamp's brief grip of her neck and left arm, Plaintiff has presented no evidence that she was harmed as a result of that grip, or even as a result of the officer's refusal to "call a squad." Dkt. No. 40-1 at 3; Dkt. No. 34-4, Exhibit C at 0:11:28-

16

43. To the contrary, after the incident ended, Plaintiff was taken to shower and back to her cell. Dkt. No. 34-4, Exhibit C at 0:21:10-17. This lack of evidence of harm weighs in favor of finding that Defendant Beauchamp's conduct was not objectively unreasonable.

Based on the undisputed facts, and taking the evidence in the light most favorable to Plaintiff, there is no evidence even suggesting that the physical force used by Defendant Beauchamp was more than required to maintain order given the evolving and tense situation, let alone objectively unreasonable. Thus, because there was no constitutional violation, the Court need not address the clearly-established-law inquiry. Accordingly, Defendant Beauchamp's motion for summary judgment as to Plaintiff's excessive force claim is **GRANTED**.

## II. Plaintiff's Failure to Intervene Claim Against Defendant Bartchlett

Because the Court concludes that Defendant Beauchamp did not violate Plaintiff's constitutional rights, Plaintiff's failure to intervene claim against Defendant Bartchlett must fail. See Hunter v. Leeds, 941 F.3d 1265, 1282 (11th Cir. 2019) ("To be held liable on a theory of nonfeasance, the officer must have been in a position to intervene but failed to do so."). Because Defendant Beauchamp did not violate Plaintiff's right to be free from excessive force, Defendant Bartchlett could not have been in a

position to intervene to protect that right.  See <u>Crenshaw v. Lister</u>, 556 F.3d 1283, 1294 (11th Cir. 2009) (holding officer had no "attendant obligation to intervene" where the court held no excessive force was used).  Thus, Defendant Bartchlett's motion for summary judgment as to Plaintiff's failure-to-intervene claim is **GRANTED**.

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment, dkt. no. 34, is **GRANTED** in its entirety.  There being no claims remaining in this action, the Clerk is **DIRECTED** to **CLOSE** this case.

**SO ORDERED**, this 5th day of January, 2023.

_____
HON. LISA GODBEY WOOD, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA